IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **PATRICK J. WOOLDRIDGE, #42662,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | Case No. 25-cv-01287-JPG |
| ) | |
| **SHERIFF CONNOR,** ) | |
| **JERRY ENDICOTT,** ) | |
| **JODY COLLMAN,** ) | |
| **JOSE MORALES,** ) | |
| **CLEVELAND RAYFORD,** ) | |
| **DR. AMPADU,** ) | |
| **ROBERT KELLY,** ) | |
| **DENISE STANFORD,** ) | |
| **AMBER CARTER,** ) | |
| **PATRICIA TITCHENAL,** ) | |
| **DR. SHACHTER,** ) | |
| **EMILY BLOZINSKI,** ) | |
| **TREY BERGMAN,** ) | |
| **TALEAH JACKSON,** ) | |
| **TONIA WEST,** ) | |
| **JAIL NURSE JANE DOE, and** ) | |
| **CENTERSTONE NURSE JANE DOE 1-3** ) | |
| ) | |
| **Defendants.** ) | |

# **MEMORANDUM AND ORDER**

**GILBERT, District Judge:**

Plaintiff Patrick Wooldridge, a pretrial detainee at Madison County Jail, brings this action *pro se* pursuant to 42 U.S.C. § 1983 for claims of unconstitutional conditions of confinement arising from the denial of drug treatment, prescription eyeglasses, dental care, and a paper grievance process at Madison County Jail. The Complaint (Doc. 1) is subject to review under 28 U.S.C. § 1915A, which requires dismissal of any portion that is legally frivolous or malicious, fails to state a claim for relief, or seeks damages from an immune defendant. Before screening this matter under § 1915A, the Court must determine whether any claims are improperly joined

1

herein and subject to severance. *Dorsey v. Varga*, 55 F.4th 1094 (7th Cir. 2022); *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007).

### The Complaint

Plaintiff makes the following allegations in the Complaint (Doc. 1, pp. 1-38): Plaintiff was detained at Madison County Jail twice: (1) August 28, 2024 - November 18, 2024 (first detention); and (2) December 12, 2024 - present (second detention). He brings four separate complaints about his conditions of confinement at the Jail, arising from the denial of necessary treatment for substance abuse (complaint 1), vision problems (complaint 2), dental issues (complaint 3) and access to a paper grievance process (complaint 4).

### Complaint 1: Drug Treatment

Plaintiff complains that he was denied adequate treatment for substance abuse. *Id*. at 8. He suffered "horrible" symptoms of withdrawal when he was taken into custody both times. During his first detention, Centerstone employee Jane Doe #1 invited him to participate in a suboxone maintenance program on September 1, 2024. He jumped at the opportunity. However, Plaintiff was not given suboxone according to Centerstone's treatment protocol, which he does not describe. The medication was administered at irregular times in different forms. As a result, Plaintiff suffered unnecessary illness, pain, and discomfort that included body aches, hot/cold flashes, anxiety, vomiting, and bowel incontinence. *Id*. at 8-9.

Staff provided suboxone only when it was convenient, and it was frequently inconvenient. Plaintiff often went 12 to 16 hours without suboxone. Nurses Robert Kelly, Denise Stanford, Patricia Titchenal, and Amber Carter regularly encouraged him to just quit the suboxone maintenance program. They also let unqualified staff, including correctional officers, administer his medication. *Id*.

Suboxone was given to him in different forms, with varying degrees of effectiveness. During his first detention, Plaintiff received fast-dissolving strips. Two days after his release from the first detention, he received an injection with a 30-day dose of suboxone on November 20, 2024. When he returned to the Jail on December 12, 2024, Plaintiff received nothing for 20 days. At the time, he was withdrawing from methamphetamine. Centerstone employees Jane Doe ##1 and 3 told correctional officers and jail staff to give Plaintiff time before talking with them. When he became suicidal during a "meth-induced" psychosis, Plaintiff alerted Nurse Kelly that his injection had worn off and caused negative side effects. Nurse Kelly informed Plaintiff that he was no longer part of the Centerstone program but agreed to set up an appointment with a facility doctor. Thereafter, Plaintiff was given crushed pills, which were less effective. *Id*.

Doctors Shachter, Rayford, and Ampadu refused to meet with him at the facility to discuss his symptoms of withdrawal, tolerance to suboxone, or increase in prescription dose/dosage. The facility's doctors explained that Centerstone controlled these decisions, while Centerstone staff said the facility was in charge. Plaintiff blames Centerstone employees Jane Doe ##1, 2, and 3 for failing to ensure that a protocol was in place for regular administration of suboxone at the Jail. *Id*.

Meanwhile, the Jail's nursing staff took very different approaches to treatment, which Plaintiff characterizes as "retaliatory."[1] *Id*. at 10. Jail Nurse Jane Doe tried to place a disposable strip into Plaintiff's mouth; Nurses Emily Blozinski and Trey Bergman instructed Plaintiff to speak with a healthcare provider first; Nurse Taleah Jackson followed no schedule for medication administration; and Nurse Tonia West forgot to put suboxone on the medication cart for

---

[1] Plaintiff cannot rely on conclusory allegations to articulate a retaliation claim under the First Amendment. To the extent he attempts to do so, the claim is considered dismissed without prejudice for failure to state a claim against any defendants.

distribution by C/O Jose Morale at least once. Plaintiff went a whole night without medication on at least one occasion and defecated on himself as a result. *Id*.

Plaintiff attempted to file paper grievances to address his complaints of inadequate substance abuse treatment. But, Sheriff Connor, Captain Collman, and Captain Endicott had no protocol in place for addressing paper grievances. The Jail only used an electronic grievance process. *Id*.

**Complaint 2: Vision Problems**

Plaintiff was prescribed eyeglasses to correct his vision after undergoing surgery for a detached retina in his right eye in 2014. *Id*. at 11. His eyeglasses disappeared while he was in custody at Alton Jail. During his second detention at Madison County Jail, Plaintiff began suffering from migraines, so he submitted written requests for replacement eyeglasses beginning in March 2025. Nurse Stanford asked, "Why are we even doing this?" *Id*. Nurse Titchenal explained that "insurance ordered it." Nurse Stanford nevertheless required Plaintiff to complete a series of eye exams while expressing disbelief with his responses. Nurse Titchenal eventually told Nurse Stanford that she would handle the matter. On the way back to his cell, C/O Ian Gray[2] told Plaintiff that Nurse Stanford did not get along with anyone.

In the weeks that followed, Plaintiff received no eyeglasses. He continued to suffer from migraines. He put in several request slips for treatment and asked for Tylenol. He was told to buy it from the commissary.

Eventually, Plaintiff was sent to the same optometrist who performed his surgery in 2014. The optometrist prescribed new eyeglasses. He still did not receive them, so Plaintiff asked Nurses Titchenal and Carter to explain why. The nurses said that they were still waiting for insurance

---

[2] This individual is not named as a defendant in the complaint, and all claims against him are considered dismissed without prejudice. *See* FED. R. CIV. P. 10(a) (title of the complaint "must name all the parties").

4

approval. When Plaintiff asked Nurse Carter about the eyeglasses again, she agreed to order them before her last day of employment on the following day. This was the last time he communicated with Nurse Carter. Plaintiff learned that she ordered a pair that was not approved by the Jail.

Plaintiff asked Nurses Bergman and Blozinski about the glasses when they began working at the Jail. Both nurses were indifferent to him. When he submitted a request slip for the replacement eyeglasses, the response indicated that the matter was now in the captain's hands without identifying which captain, *i.e.*, Jody Collman or Jerry Endicott. Plaintiff submitted written and electronic grievances about the matter, but he was still waiting for new eyeglasses when he filed this lawsuit.

### Count 3: Dental Issues

Plaintiff had fillings on the right side of his mouth that loosened when he bit into his food on May 12, 2025. *Id*. at 14. Nurse Jane Doe examined his mouth two days later and noted swelling. She ordered antibiotics. For three weeks, Plaintiff submitted request slips for dental care. Before receiving treatment, his top filling fell out on June 7, 2025. Nurse Jackson met with Plaintiff to discuss the matter. She said the facility was out of dental wax, but she agreed to request approval for a saltwater rinse from Dr. Shachter. On June 13, 2025, Nurse Jackson informed Plaintiff that Dr. Shachter denied the request, even though it was normally approved for dental issues. Nurse Jackson agreed to schedule an appointment with a nurse later the same day, but she charged a co-pay of $20 instead of the standard $10 for the nurse visit. This confirmed Plaintiff's suspicion that the staff were retaliating against him. *Id*.

### Count 4: Grievance Process

Plaintiff complains about the electronic grievance filing system at the Jail. *Id*. at 17. His paper grievances and complaints were not processed by Nurses Kelly, Jackson, or Blozinski. *Id*.

His electronic grievance was mishandled by Nurse West. *Id*. He blames Sheriff Connor, Captain Collman, and Captain Endicott for having no protocol in place for addressing paper grievances. *Id*. at 17-18.

## Discussion

The Court has reviewed the *pro se* Complaint and identified the following claims:

**Count 1:** Fourteenth Amendment claim against all defendants, including Centerstone Nurses Jane Doe ##1-3, Jail Nurse Jane Doe, Nurse Kelly, Nurse Stanford, Nurse Titchenal, Nurse Carter, Nurse Blozinski, Nurse Bergman, Nurse Jackson, Nurse West, C/O Morales, Dr. Shachter, Dr. Rayford, Dr. Ampadu, Captain Collman, Captain Endicott, and Sheriff Connor, for denying Plaintiff adequate treatment for substance abuse withdrawal during his first and second detention at the Jail.

**Count 2:** Fourteenth Amendment claim against Nurses Stanford, Titchenal, Carter, Blozinski, and Bergman and Captain Collman or Endicott for denying Plaintiff replacement eyeglasses from March to June 2025.

**Count 3:** Fourteenth Amendment claim against Jail Nurse Jane Doe, Nurse Jackson, and Dr. Shachter for denying Plaintiff dental care for loose and/or lost fillings beginning May 2025.

**Count 4:** Fourteenth Amendment claim against all defendants for denying Plaintiff access to a paper grievance process at the Jail in 2024-25.

**Count 5:** First Amendment claim against Nurse Jane Doe, Nurse Taleah Jackson, Dr. Shachter, Nurse Blozinski, Nurse Bergman, Nurse West, and Jail Nurse Jane Doe for retaliating against Plaintiff by charging him a $20 copayment for nurse visits one time and/or taking other adverse action against him.

**The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court.**

## Counts 1, 2, and 3

The Fourteenth Amendment Due Process Clause governs claims of inadequate medical care brought by a pretrial detainee.[3] *Collins v. Al-Shami*, 851 F.3d 727, 731 (7th Cir. 2017). A

---

[3] Plaintiff alleges that he was a pretrial detainee during all times relevant to this action.

jail official violates the Fourteenth Amendment when: (1) the defendant acts purposefully, knowingly, or perhaps even recklessly when considering the consequences their actions; and (2) the defendant's actions are objectively unreasonable based on the totality of the facts and circumstances faced by the individual alleged to have provided inadequate medical care. *McCann v. Ogle Cty., Illinois,* 909 F.3d 881, 886 (7th Cir. 2018). Negligence does not support a claim under the Fourteenth Amendment.

When pleading any claim, a plaintiff must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); FED. R. CIV. P. 8. Section 1983 liability requires involvement in the constitutional deprivation. *Wilson v. Civil Town of Clayton*, 839 F.2d 375, 384 (7th Cir. 1988). Plaintiff must demonstrate that each individual defendant participated in a violation of his rights. *Pepper v. Village of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005). This requires a "causal connection" or an "affirmative link" between the misconduct and the official sued. *Rizzo v. Goode*, 423 U.S. 362, 371 (1976).

***Count 1: Drug Treatment***

Plaintiff claims he was denied adequate treatment for symptoms of withdrawal through the suboxone maintenance program at the Jail.[4] He names nineteen defendants in connection with this claim: Jail medical doctors (Doctors Shachter, Rayford, and Ampadu), Jail nurses (Jane Doe, Kelly, Stanford, Titchenal, Carter, Blozinski, Bergman, Jackson, and West), a correctional officer (C/O Morales), supervisory officials (Captain Collman, Captain Endicott, and Sheriff Connor), and Centerstone staff (Jane Doe ##1-3).

---

[4] Suboxone is a medication used to treat opioid addiction. Plaintiff does not indicate what class of drugs caused his withdrawal during the first detention but alleges that methamphetamine triggered his withdrawal during his second detention. Methamphetamines are not opioids.

Plaintiff asserts that Doctors Shachter, Rayford, and Ampadu would not meet with him and discuss his symptoms of withdrawal, tolerance to suboxone, or changes in medications even after Centerstone's employees failed to do so and removed him from the suboxone maintenance program. Plaintiff suffered serious symptoms of withdrawal as a result. At this early stage, Count 1 shall receive further review against Doctors Shachter, Rayford, and Ampadu.

This claim also survives screening against Nurses Robert Kelly, Denise Stanford, Patricia Titchenal, and Amber Carter. These nurses allegedly encouraged Plaintiff to quit the suboxone maintenance program, failed to administer his medication, and encouraged unqualified staff to administer it instead. Count 1 shall proceed against Nurses Kelly, Stanford, Titchenal, and Carter.

The allegations fall short of stating a claim against Nurses Jane Doe, Emily Blozinski, Trey Bergman, Taleah Jackson, and Nurse Tonia West. Plaintiff alleges that these nurses instructed him to speak with another provider about his medication or administered it after some delay. Plaintiff does not state when, how often, and under what circumstances this occurred or describe how it harmed him. Count 1 shall be dismissed without prejudice against Nurses Doe, Blozinski, Bergman, Jackson, and West.

Plaintiff also states no plausible claim against C/O Morales. The officer is mentioned once, in reference to a nurse's failure to place suboxone on the medication cart operated by C/O Morales. Count 1 shall be dismissed without prejudice against this defendant.

The Complaint articulates no claim against Centerstone employees Jane Doe ##1-3. Plaintiff generally faults these defendants for failing to properly administer the suboxone maintenance program. More specifically, he alleges that Jane Doe #1 invited him to participate in the program during his first detention, and he agreed to do so because he was suffering symptoms of withdrawal. He alleges that Jane Doe #1 and #3 recommended that jail staff give him time to

request help for symptoms of withdrawal during his second detention while his 30-day dose of suboxone was still in effect on December 12, 2024.  The allegations suggest no objectively unreasonable conduct on the part of these defendants, so Count 1 shall be dismissed for failure to state a claim against them.

Finally, Plaintiff's allegations also support no claim against Captain Collman, Captain Endicott, and Sheriff Connor.  A high-ranking officer named in an individual capacity "cannot be held liable in a section 1983 action unless he caused or participated in an alleged constitutional deprivation."  *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983).  The Complaint does not describe any role these officers played in the decision to treat Plaintiff's symptoms of withdrawal or drug addiction.  Plaintiff's claims against these defendants instead stem from allegations of misconduct by their subordinates.  However, the doctrine of *respondeat superior* liability is inapplicable in this context.  *Kinslow v. Pullara*, 538 F.3d 687, 692 (7th Cir. 2008).  In addition, Plaintiff blames these officials for failing to make paper grievances available, when a grievance process is not constitutionally mandated.  Count 1 shall be dismissed for failure to state a claim against Captain Collman, Captain Endicott, and Sheriff Connor.

In summary, Count 1 survives screening and shall receive further review against Defendants Shachter, Rayford, Ampadu, Kelly, Stanford, Titchenal, and Carter.  This claim is dismissed without prejudice against all other defendants for failure to state a claim.

***Count 2: Vision Problems***

The Fourteenth Amendment vision claim against Nurses Stanford and Titchenal survives screening.  Plaintiff informed both nurses about his history of vision loss associated with a detached retina, his prior prescription for eyeglasses, and his missing glasses.  He also complained of migraine headaches and blurry vision without his eyeglasses.  These defendants nevertheless

denied or delayed his request for replacement glasses while disregarding his complaints of pain. Count 2 shall receive further review against both defendants.

However, this claim shall be dismissed without prejudice against Defendants Carter, Bergman, Blozinski, Collman, and Endicott. Nurse Carter acted reasonably when ordering the plaintiff eyeglasses without delay, and the allegations against all other defendants are too vague to support a constitutional claim.

*Count 3: Dental Issues*

The Fourteenth Amendment claim for objectively unreasonable dental care shall proceed Nurse Jackson and Dr. Shachter. These defendants responded to Plaintiff's loose and lost fillings by denying or delaying necessary dental treatment in May and June 2025. However, Count 3 shall be dismissed without prejudice against Jail Nurse Jane Doe who responded to Plaintiff's initial complaints by examining him and prescribing a course of antibiotics.

## Count 4

The United States Constitution does not compel jails to provide a paper grievance procedure, or any grievance process at all. Therefore, the Jail's use of an electronic grievance procedure does not give rise to a constitutionally protected right. *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011); *Grieveson v. Anderson*, 538 F.3d 763, 772-73 (7th Cir. 2008). Count 4 shall be dismissed with prejudice, along with Plaintiff's request for an injunction requiring a paper grievance process at the Jail.

## Count 5

A plaintiff bringing a retaliation claim must demonstrate that: "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation likely to deter such activity; and (3) the First Amendment activity was at least a motivating factor in the decision to impose the

deprivation." *Hawkins v. Mitchell*, 756 F.3d 983, 996 (7th Cir. 2014) (citations omitted). Plaintiff offers a single example of suspected retaliation. He alleges that a nurse charged him a double copayment of $20 for his nurse visits one day.[5] However, he also describes two encounters with nursing staff on that date and offers no other facts supporting a retaliation claim against the defendants. Count 5 shall be dismissed without prejudice for failure to state a claim.

### Disposition

**IT IS ORDERED** that the Complaint (Doc. 1) survives screening under 28 U.S.C. § 1915A, and the following claims will receive further review against the below-listed defendants:

- **COUNT 1** will proceed against Defendants **SHACHTER, RAYFORD, AMPADU, KELLY, STANFORD, TITCHENAL,** and **CARTER**, in their individual capacities.

- **COUNT 2** will proceed against Defendants **STANFORD** and **TITCHENAL**, in their individual capacities.

- **COUNT 3** will proceed against Defendants **JACKSON** and **SHACHTER**, in their individual capacities.

**ALL OTHER CLAIMS** and **DEFENDANTS** are dismissed without prejudice for failure to state a claim. The request for injunctive relief in connection with Count 4 is likewise **DISMISSED**.

**IT IS ORDERED** that the Clerk of Court shall prepare for Defendants **SHACHTER, RAYFORD, AMPADU, KELLY, STANFORD, TITCHENAL, JACKSON,** and **CARTER**, in their individual capacities only: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1), and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return

---

[5] No independent constitutional claim arises from this alleged overpayment. The United States Constitution "does not compel prison administrators to provide cost-free medical services to inmates who are able to contribute to the cost of their care." *Poole v. Isaacs*, 703 F.3d 1024, 1026 (7th Cir. 2012).

11

the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

**IT IS ORDERED** that, if a Defendant can no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with that Defendant's current work address, or, if not known, that Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint (Doc. 1) and shall not waive filing a reply under 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244 and Local Rule 8.2, Defendants need only respond to the issues stated in this Merits Review Order.**

**IT IS ORDERED** that if judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, even though his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action. FED. R. CIV. P. 41(b).

**The Clerk of Court is DIRECTED to ENTER the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act and TERMINATE ALL DEFENDANTS *except* Defendants SHACHTER, RAYFORD, AMPADU, KELLY, STANFORD, TITCHENAL, and CARTER as parties in CM/ECF.**

**IT IS SO ORDERED.**

**DATED: 8/28/2025**

s/J. Phil Gilbert<br>
**J. PHIL GILBERT**<br>
**United States District Judge**

### Notice

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, the defendants will enter an appearance and file an Answer to your Complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is possible that it will take 90 days or more. When the defendants have answered, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, in order to give the defendants notice and an opportunity to respond to those motions. Motions filed before the defendants' attorneys file an appearance will generally be denied as premature. The plaintiff need not submit any evidence to the court at this time, unless otherwise directed by the Court.